**SLIP OP 11-93**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ISAAC INDUSTRIES, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>   Defendant. | Before: Pogue, Chief Judge<br>Court No. 07-00178 |

**OPINION**

[Defendant's motion for summary judgment is granted.]

Dated: August 2, 2011

  Peter S. Herrick, PA (Peter S. Herrick) for Plaintiff Isaac Indus.

  Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Edward F. Kenny); Sheryl A. French, Of Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Bureau of Customs and Border Protection for Defendant United States.

  **Pogue, Chief Judge**: In this matter, Plaintiff Isaac Industries ("Isaac") seeks review of the Defendant United States Customs and Border Protection Service's ("Customs") denial of Isaac's claims for drawback.[1]  Plaintiff filed drawback claims

---

  [1] A drawback is the refund of duty paid on an import that is subsequently re-exported. 19 U.S.C. § 1313(a) (2006).  Further

and related protests during a transitional period within which Customs closed the Drawback Center at the Port of Miami ("Miami office") and gradually transferred claim processing to the Drawback Center at the Port of Los Angeles ("Los Angeles office"). Plaintiff alleges that the Los Angeles office had no authority to make drawback determinations denying its claims.

Before the court are Defendant's motion for summary judgment and Plaintiff's cross-motion for a stay of the proceedings and remand to the Miami office. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).

After a brief review of relevant background and the standard of review, the court will explain below that there is no genuine dispute as to any material fact, Customs properly denied Plaintiff's drawback entries and protests, and Plaintiff's summons is untimely filed. Accordingly, Defendant's motion for summary judgment is granted.

## BACKGROUND

Prior to July 2002, Isaac imported polyether polyol into the United States, later re-exported it, and filed three separate drawback entries[2] ("entries") for this merchandise with Customs's

---

citations to Title 28 of the United States Code are to the 2006 edition.

[2] Plaintiff filed AGK-4509025-7 on July 17, 2002; and AGK-0613025-8 and AGK-1234567-6 on July 31, 2002. Def.'s Mot. Summ. J. 2.

Miami office.

Shortly thereafter, Customs adopted and published a final rule announcing the planned closure, on July 23, 2003, of the Miami office for processing drawback claims. Consolidation of Customs Drawback Centers, 68 Fed. Reg. 3381, 3381 (Dep't Treasury Jan. 24, 2003). The rule promulgated a "phased-in" closure plan, requiring the Miami office to continue processing unliquidated claims for twelve months following the date of effective closure, i.e., until July 23, 2004.[3] Id. After July 23, 2004, the Miami Office would forward all unprocessed claims to the Los Angeles drawback center. Id. at 3383.

Customs ultimately denied all three of Isaac's drawback claims, on December 22, 2004, and, in a January 21, 2005 letter from the Los Angeles office, notified Isaac of the denial and liquidation of the three entries without any drawback. Letter from John S. Beck to Isaac Industries, Jan. 21, 2005, ECF No. 39-2 at 2 ("Drawback Denial Letter"). Furthermore, Customs posted a bulletin notice, detailing the liquidation, at the Port of Miami

---

[3] An initial error in the parties' motions contended that the Miami office closed in November 2004, which would have extended its jurisdiction accordingly until November 2005. Pl.'s Mot. Opp. Def.'s Mot. Summ. J. 2; Def.'s Mot. Summ. J. 3. Both parties corrected the error in a conference call with the court and agreed that the Miami Office closed on July 23, 2003.

on February 5, 2005.⁴  Customs Bulletin Notice of Entries Liquidated for February 4, 2005, ECF No. 39-2 at 14 ("Bulletin Notice").

On April 18, 2005, Plaintiff filed a protest of Customs's drawback denial.  Protest No. 2704-05-100868 regarding Drawback Entry No. AGK-4509025-7, AGK-0613025-8, and AGK-1234567-6, Apr. 18, 2005, ECF No. 39-2 at 16–18 ("First Protest").  Customs later sent Isaac a letter stating that "[d]rawback protest[s] can no longer be filed in the Miami Port. Please submit protest to a port where drawbacks are filed."  Decl. of Peter S. Herrick, Jun. 8, 2005, ECF No. 42-2 at 11, ("Resolution Request").  The record contains copies of Isaac's protest forms stamped "Received" by the Los Angeles Office.  Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 5; First Protest 16.  The Los Angeles office denied Isaac's protest on November 9, 2005, reasoning that the protest "had no support and no amendment [was] received within 180 days."⁵  First Protest

---

⁴ "The bulletin notice of liquidation will be posted for the information of importers in a conspicuous place in the customhouse at the port of entry . . . . This posting or lodging will be deemed the legal evidence of liquidation. For electronic entry summaries, the date of liquidation will be the date of posting of the bulletin notice[.]" 19 C.F.R. § 159.9(b) - (c)(1) (2011).

⁵ According to the relevant regulations, "[a] protest may be amended at any time prior to the expiration of the period within which the protest may be filed . . . . [It] may assert additional claims pertaining to the administrative decision . . . relating to the same category of merchandise that is the subject of the protest." 19 C.F.R. § 174.14(a) (2011).

15-18.

Plaintiff commenced this action on May 24, 2007 to contest the denial of its protests.[6]  Ct. Summons 1-2.  Defendant moves for summary judgment, claiming entitlement to judgment as a matter of law because the court lacks jurisdiction over Plaintiff's untimely complaint.

**STANDARD OF REVIEW**

The court may grant a party's motion for summary judgment when "there is no genuine issue as to any material fact," and "the movant is entitled to judgment as a matter of law." USCIT R. 56(c).  Genuine issues entail "[m]aterial issues [that] arise

---

[6] On April 18, 2006, a year after the first set of protests, but before filing suit, Plaintiff filed a second set of protests, this time with the Los Angeles office.  Def.'s Mot. Summ. J. 4. Customs denied this second set of protests on July 20, 2006, stating that it was untimely filed.  Protest No. 2704-06-101358 regarding Drawback Entry No. AGK-4509025-7 (Jul. 20, 2006); Protest No. 2704-06-101359 regarding Drawback Entry No. AGK-0613025-8 (Jul. 20, 2006); Protest No. 2704-06-101360 regarding Drawback Entry No. AGK-1234567-6 (Jul. 20, 2006)(ECF No. 39-2 at 19-22).  During this second round of protest evaluation, Isaac's counsel sent a June 5, 2006 letter to Customs, in which he explained that he "did not file an amendment [during the original protest evaluation] because [he] did not have the protest number[.]"  Letter from Peter S. Herrick to Port Director, Long Beach Drawback Branch Office, June 5, 2006, ECF No. 39-2 at 24. Plaintiff's counsel further claimed that he had originally sought the protest number via a June 7, 2005 letter, and in turn, now requested "the opportunity to amend the protest."  Id.  Customs thus labeled the June 7, 2005 letter as a "§ 1520(c) claim," which it denied on January 19, 2007 as untimely filed.  Letter from John Beck, Drawback Specialist, U.S. Customs and Border Protection, to Isaac Industries, Jan. 19, 2007, ECF No. 39-2 at 26-27); Def.'s Mot. Summ. J. 5.  Isaac, however, does not rely on or raise its second set of protests here.

when 'facts . . . might affect the outcome of the suit under governing law[.]'" Trumpf Med. Sys., Inc. v. United States, __ CIT __, 753 F. Supp. 2d 1297, 1305 (2010) (citations omitted).

Whether jurisdiction exists is a question of law. See Sky Techs. LLC v. SAP AG, 576 F.3d 1374, 1378 (Fed. Cir. 2009). Plaintiff, "[the] party seeking the exercise of jurisdiction in its favor[,] has the burden of establishing that . . . jurisdiction exists." Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936)).

## DISCUSSION

### **Plaintiff's alleged issues of material fact**

In opposing summary judgment, Plaintiff alleges four disputed material facts: (1) its awareness of the drawback authority transfer to Los Angeles; (2) the timing of the port of Miami's retention and transfer of jurisdiction; (3) the controlling nature of Customs's bulletin posting in Miami; and (4) the location and timing of Plaintiff's first set of protests. Each is discussed, in turn, below.

First, Plaintiff claims that it was unaware of Customs's decision to close its Miami office, generating a "misleading" process that culminated in this case. Pl.'s Mem. Opp. Def.'s

Court No. 07-00178                                                    Page 7

Mot. Summ. J. 5-6.[7]  This argument is unavailing.  "The publication of rules . . . in the Federal Register gives legal notice of their contents to those subject to, or affected by, them, 'regardless of actual knowledge . . . or of the hardship resulting from innocent ignorance.'"  Higashi v. United States, 225 F.3d 1343, 1349 (2000) (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947)).[8]  Isaac therefore cannot rely on its unawareness of the Miami office's planned closure to argue that the Los Angeles office lacked jurisdiction over drawback claims.

Plaintiff's second factual contention asserts that the Federal Register notice mandated that the Port of Miami would retain drawback jurisdiction during the period in question. Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 6 ("the Port of Miami was to retain unliquidated drawback entries until November, 2005, or July, 2005").  This argument, however, relies on a flawed reading of the Federal Register notice.  The notice explicitly states

---

[7] Because of this lack of awareness, Isaac argues, it filed its protests with the Port of Miami, thereby leading Plaintiff to allege that the Miami office, not the Los Angeles office, had jurisdiction over its drawback claim.  Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 5-6.

[8] See also Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 27 CIT 1541, 1549 n.10, 285 F. Supp. 2d 1371, 1378 n.10 (2003) ("[T]he publication of an item in the Federal Register constitutes constructive notice of anything within that item") (citations omitted).

that the Miami office would retain jurisdiction over all unprocessed drawback claims for a year after its effective closure date of July 23, 2003; after July 23, 2004, the Los Angeles office would assume jurisdiction over all of the Miami office's unprocessed claims. Consolidation of Customs Drawback Centers, 68 Fed. Reg. at 3381-83. Thus, Plaintiff erroneously claims that the Miami office still had authority to assess drawback claims through July or November 2005.[9] It is clear that at all times during the period in question,[10] the Los Angeles office had jurisdiction to assess drawback entries. See Consolidation of Customs Drawback Centers, 68 Fed. Reg. at 3381-83.

Plaintiff's third contested factual issue turns on the bulletin notice posted at the Port of Miami. Plaintiff contends

---

[9] July 2005 represents an incorrect calculation based on the original Federal Register notice, which effectively transferred jurisdiction in July 2004. Consolidation of Customs Drawback Centers, 68 Fed. Reg. at 3381-83; Pl.'s Mot. Opp. Def.'s Mot. Summ. J. 2. The mention of November 2005 can be attributed to the parties' earlier erroneous assertion that the Miami office closed in November 2004. See infra note 5 (highlighting the parties' initial confusion over the Miami office's actual closing date).

[10] Plaintiff originally filed the claims with the Miami office in 2002, when that office was still open, but Customs did not make the drawback determination until the period from December 22, 2004 to February 5, 2005, during which it denied Plaintiff's drawback entries, formally notified it of the denial (with extensive documentation of the reasons), and then posted the liquidation results. Bulletin Notice at 14; Drawback Denial Letter at 2; Drawback Entry Forms at 3-14.

that "Miami had the authority to act on these entries which it did on February 5, 2005 by liquidating [them with] no change." Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 3. While February 5, 2005 was the legal date of the liquidation, Plaintiff's argument builds upon a misunderstanding of this posting.[11] Just because a notice of liquidation is posted at a particular port does not mean that the port itself possesses drawback authority. Granted, Isaac filed its claims in Miami when the Miami office was still open, but the claims were properly transferred, along with jurisdiction, to Los Angeles.[12] Therefore, the existence of a Miami bulletin notice posting does not preclude the Los Angeles office's authority to review Plaintiff's drawback claim. See 19 C.F.R. § 191.61; Consolidation of Customs Drawback Centers, 68 Fed. Reg. at 3381-83.

In Plaintiff's fourth basis for its cross motion, it claims that the Miami office should have made the drawback determination because Isaac filed its protests with the Port of Miami on April

---

[11] The bulletin must be posted at the customhouse at the port of entry of the goods in question. 19 C.F.R. § 159.9(b). As such, Customs was legally required to post the bulletin at the Port of Miami because that is where the goods in question were entered.

[12] 19 C.F.R. § 191.61(a)(2) also enables "[t]he port director selecting the claim for verification [to] forward" the claim "to other drawback offices when deemed necessary.". 19 C.F.R. § 191.61(a)(2). Clearly, the closure of a port's drawback office would qualify as such a necessary situation.

29, 2005.  Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 2.  The legal authority to process the claims, however, lay with the Los Angeles Drawback Center.  In addition, the initial denial of Plaintiff's drawback claim, which came from the Los Angeles office, and the June 8, 2005 Customs letter related thereto both clearly indicate that the Los Angeles office had taken over processing Plaintiff's claim.[13]  See Resolution Request at 11; Drawback Denial Letter at 2.  As noted earlier, the Miami Office closed in July, 2003 and transferred all remaining claims to the Los Angeles office by July, 2004.  Plaintiff has no basis for claiming that the Miami Office should have made the drawback determination, especially when that office had been closed for two years.

Therefore, there is no genuine issue of material fact in dispute, and the court will consider Defendant's motion for summary judgment.  USCIT R. 56(c).

**Defendant's motion for summary judgment**

Customs properly asserts that this court may not hear Plaintiff's claim because it is untimely filed.  28 U.S.C.

---

[13] The record reflects this change of authority.  While Isaac's counsel avers that he faxed the protests to the Port of Miami on April 29, 2005, Defendant's copies of the same forms suggest that they were first received by the Los Angeles office. See First Protest at 16 (highlighting the fact that Customs has submitted copies of Plaintiff's protests marked as "RECEIVED" by the Los Angeles office).

§ 2636(a) requires that an action contesting the denial of a protest must be filed within one hundred and eighty days after the date of denial.  28 U.S.C. § 2636(a).  Customs argues that because Isaac filed its summons on May 24, 2007, long after Customs's November 9, 2005 denial of its April 29, 2005 protests, the court cannot consider Plaintiff's complaint.[14]  Def.'s Mot. Summ. J. 11.  Plaintiff correctly responds that the protests themselves were timely, having been filed fewer than 180 days after Customs's liquidation.  19 U.S.C. § 1514(c)(3)(A); Pl.'s Mot. Opp. Def.'s Mot. Summ. J. 7-8.  However, the timely filing of a protest does not change the fact that Isaac filed its complaint more than a year and a half after Customs's protest denial and well past the 180 day statutory time limit for such a filing.  See 28 U.S.C. § 2636(a).

Thus, because Isaac filed this action outside of the statutory time limits, the court may not hear this case.  See Computime, Inc. v. United States, 8 CIT 259, 261, 601 F. Supp. 1029, 1030 (1984) ("[P]laintiff's remedy was to file an action in this court within 180 days of notice of the denials . . . not file another set of protests").

---

[14] Customs further argues that Isaac's second set of protests were invalid and that this court has no jurisdiction over the rejection of Isaac's § 1520(c) claim.  Because Isaac has not addressed these issues, the court need not consider them.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's cross-motion for a stay of the proceedings is denied.

                                               /s/ Donald C. Pogue
                                        Donald C. Pogue, Chief Judge

Dated: August 2, 2011
       New York, N.Y.

**SLIP OP 11-93**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ISAAC INDUSTRIES, INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES,<br><br>      Defendant. | Before: Pogue, Chief Judge<br>Court No. 07-00178 |

**JUDGMENT**

The court having heard and decided this matter, now in accordance with that opinion, defendant's motion for summary judgment is granted; plaintiff's complaint is dismissed.

                                                                /s/ Donald C. Pogue
                                          Donald C. Pogue, Chief Judge

Dated:   August 2, 2011
            New York, New York